345 So.2d 623 (1977)
Clanton D. PICKLE, Jr.
v.
STATE of Mississippi.
No. 49309.
Supreme Court of Mississippi.
May 4, 1977.
J.A. White, Durant, for appellant.
A.F. Summer, Atty. Gen., by John C. Underwood, Jr., Special Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
*624 LEE, Justice, for the Court:

PART I
Clanton D. Pickle, Jr., was convicted of capital murder and sentenced to death by the Circuit Court of Holmes County. His conviction and sentence must be set aside under this Court's holding in Jackson v. State, 337 So.2d 1242 (Miss. 1976), and the case is reversed and remanded for further proceedings consistent with the opinion in Jackson.
In addition to the constitutional question, appellant assigns the following errors in the trial below:
(1) The trial court erred in overruling appellant's motion to quash the indictment.
*625 (2) Mississippi Code Annotated § 97-3-19(2)(e) (Supp. 1976), requires that the crime of rape must be shown to have been committed while effecting the death of the victim in order to sustain a conviction for capital murder.
(3) The verdict of the jury is contrary to the great weight of the evidence.
(4) The trial court erred in declining to reduce appellant's sentence under Mississippi Code Annotated § 43-1-39 (Youth Court Statute).
(5) The trial court erred in refusing appellant's requested Instructions Nos. D-3 and D-6.
(6) The trial court erred in removing a juror from the regular panel and replacing him with an alternate juror.
(7) The trial court erred in admitting evidence of alleged statements made by appellant's father concerning the identification of a ring.

I.
Did the trial court err in overruling appellant's motion to quash the indictment?
Appellant, a sixteen-year-old youth, was indicted by the Holmes County grand jury during the April, 1975 Term of court for capital murder. The indictment charged that on November 26, 1974, Pickle killed and murdered Mary Elizabeth Harthcock while committing the crime of rape against her. On October 8, during the regular October, 1975 Term, the grand jury was discharged, and, subsequently, at the same term of court, it was reconvened and a new indictment was returned against appellant charging him with capital murder and specifically citing Mississippi Code Annotated § 97-3-19(2)(e) (Supp. 1976), as required by Mississippi Code Annotated § 99-17-20 (Supp. 1976). At the same time, the grand jury returned two burglary indictments.
Appellant contends that the grand jury was recalled for the purpose of bringing a new indictment against him and that the grand jury, once dismissed, could not be reconvened because the public interest did not require its recall. This question has been answered in the negative by Earnest v. State, 237 Miss. 509, 115 So.2d 295 (1959), where the Court said:
"There is no merit whatever in the appellant's only contention made here, towit that the trial court committed error in refusing to quash the indictment. The right of the trial judge to recall or reconvene the grand jury at any time before adjournment of court has been settled beyond question by the decisions of this Court. Haynes v. State, 93 Miss. 670, 47 So. 522, 17 Ann. Cases 653; Bell v. State, 118 Miss. 140, 79 So. 85; Kyzar v. State, 125 Miss. 79, 87 So. 415." 237 Miss. at 511, 115 So.2d at 296.

II.
Does Mississippi Code Annotated § 97-3-19(2)(e) (Supp. 1976) require that the death of the victim be effected while committing the crime of rape in order to sustain a conviction for capital murder?
Mississippi Code Annotated § 97-3-19(2)(e) (Supp. 1976) states:
"(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
* * * * * *
(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson or robbery, or in any attempt to commit such felonies; .. ."
Miss Harthcock's body was found nude from the waist down in the dining room of her home. The pathologist testified that she had been raped and that she was subsequently shot with a shotgun in the chest, resulting in her death.
In 40 Am.Jur.2d Homicide § 73, at 366-367 (1968), a general discussion of the question is set out as follows:
"It is the general view that a homicide is committed in the perpetration or attempt to perpetrate another crime when the accused is engaged in any act required *626 for the full execution of the initial crime, and the homicide is so closely connected with such other crime as to be within the res gestae thereof. The rule expressed by some courts is that a homicide is committed in the perpetration or attempted perpetration of a crime specified by the felony-murder statutes when there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents, forming one continuous transaction. The res gestae of the underlying crime begins where an indictable attempt is reached and ends where the chain of events between the attempted crime or completed felony is broken. Application of the felony-murder doctrine does not require that the underlying crime shall have been technically completed at the time of the homicide, nor does it matter at what point during the commission of the underlying felony the homicide occurs. When, however, there is a break in the chain of events leading from the initial felony, as by the felon's abandonment of the original criminal activity, a subsequent homicide committed by him is not within the felony-murder statute, and it is a question of fact for the jury whether the original criminal activity did in fact terminate prior to the homicide. In this connection, escape or attempted escape is generally held to be so immediately connected with the initial crime as to be a part of it. The felony-murder doctrine does not apply, however, when the determination to steal property of the victim is not formed until after the homicide."
In MacAvoy v. State, 144 Neb. 827, 15 N.W.2d 45 (1944), the Nebraska court said:
"When a person is killed by another in the perpetration of or attempt to perpetrate a rape, an intent to kill is not a necessary element of the crime. It is first degree murder, whether an intent to kill be shown or not. Morgan v. State, 51 Neb. 672, 71 N.W. 788. The defendant urges, however, that the killing occurred after the act of sexual intercourse took place and, consequently, it was not a killing in the perpetration of a rape. There is no merit in this argument. If a killing is committed within the res gestae of the felony charged it is committed in the perpetration of, or attempt to perpetrate, the felony, within the meaning of the statute. Francis v. State, 104 Neb. 5, 175 N.W. 675. The reasons for this rule are well stated in Bissot v. State, 53 Ind. 408, wherein it is said: `Although we must construe criminal statutes strictly, adhere closely to the definition of crimes, and interpret technical words according to their fixed meaning, yet we cannot give to the section under consideration the construction contended for by the appellant. In our opinion, where the homicide is committed within the res gestae of the felony charged, it is committed in the perpetration of, or attempt to perpetrate the felony, within the meaning of the statute; and, being convinced in this case that the burglary charged was committed, and that the homicide was committed within the res gestae of the burglary, we must hold that it was committed in the perpetration of the burglary, within the true intent and fair meaning of the statute. It seems to us that such a construction is safe to the State and the citizen, and the only one by which the intention of the legislature can be practically carried into effect.' See, also, Conrad v. State, 75 Ohio St. 52, 78 N.E. 957, 6 L.R.A.N.S., 1154, 8 Ann. Cas. 966; Commonwealth v. Osman, 284 Mass. 421, 188 N.E. 226; State v. Whitfield, 129 Wash. 134, 224 P. 559." 15 N.W.2d at 48.
And, in Lipscomb v. State, 223 Md. 599, 165 A.2d 918 (1960), the Maryland court held:
"As to the charge of murder in the first degree, we may note that it would make no difference as to guilt under the above statute whether death occurred after the rape had been accomplished or in an attempt to perpetrate it." 223 Md. at 606, 165 A.2d at 922.
If the crime of capital murder could not be sustained unless the homicide occurred during the actual attack upon a victim or *627 during the actual burglary, kidnapping, arson or robbery, such could be an inducement for an assailant to kill his victim after the commission of the first crime in order to silence her/him as a witness. The rule stated in the foregoing cases is the more reasonable, and we hold that where the two crimes are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained.

III.
Was the verdict of the jury contrary to the great weight of the evidence?
It is not necessary to detail the evidence, since the case is remanded for a new trial. (Appellant did not testify at the trial). However, we have carefully considered the same, and, while it is circumstantial, the evidence and reasonable inferences therefrom constituted a guilt question for the jury.

IV.
The question presented in this assignment is controlled by Wansley v. State, 339 So.2d 989 (Miss. 1976). However, even if the trial judge had discretion to reduce appellant's sentence pursuant to Mississippi Code Annotated § 43-1-39 (1972) [Youth Court Statute], under the facts of this case, his discretion was not abused.

V-VI.
The trial court committed no error in refusing appellant's requested Instructions Nos. D-3 and D-6. Assigned Error No. VI probably will not arise on a second trial of the case, and it is not necessary to discuss the point here.

PART II

VII.
Did the trial court err in admitting evidence of alleged statements made by appellant's father concerning the identification of a ring found beside the victim's body?
According to Deputy Taylor, he and Sheriff Moore went to the Pickle home, appellant and his father came out on the porch, the ring (with initial "P" thereon) was shown to appellant's father, and the following transpired:
"Q. And what did Mr. Pickle say?
A. He said, `This is C.D.'s ring.'
Q. And what  and you say C.D. was standing there?
A.C.D. was standing there.
Q. And what did he say?
A. He said, `No, that's not my ring; I lost my ring three days ago'  and stuck out his hand  `squirrel hunting'  he said he was squirrel hunting."
When a person, with full liberty to speak, remains silent on being accused of a crime, his failure to reply or to deny the accusation is relevant as tending to show his guilt. The accusatory or incriminating statement is admissible not as evidence of the truth of the fact stated, but to show accused's admission by silence. The doctrine of admission by silence is settled beyond question in the jurisprudence of this state. Robinson v. State, 235 Miss. 150, 108 So.2d 583 (1959). When the accused denies the accusatory or incriminating statement, it is not admissible.
The statement of appellant's father is hearsay and became inadmissible when appellant denied ownership of the ring. Had appellant remained silent, an exception to the hearsay rule would have arisen, and the statement would have become admissible under the admission by silence doctrine as would the fact that appellant remained silent.
Jolly v. State, 269 So.2d 650 (Miss. 1972), stated the rule as follows:
"The argument of the appellant, that the statements of his co-defendants made to police officers in his presence were inadmissible, is not well taken. There is ample authority to the effect that statements made by a third person, which tend to incriminate an accused, are admissible so long as they are made in the presence of the accused and are not contradicted, denied nor objected to by the accused. *628 Here the statements made by the witnesses were not refuted by the appellant." 269 So.2d at 656.
In Duck v. State, 247 So.2d 689 (Miss. 1971), this Court said:
"The doctrine of accusatory statements made in the presence and hearing of the defendant is admissible, as admissions implied from silence are well established in this state. See Jones v. State, 228 Miss. 296, 87 So.2d 573 (1956); Thurmond v. State, 212 Miss. 36, 53 So.2d 44 (1951)." 247 So.2d at 691.
Anderson v. State, 171 Miss. 41, 156 So. 645 (1934), contains a discussion of the admission by silence doctrine, wherein the Court stated:
"The next, and most serious, assignment of error urged by the appellants is that the court below erred in permitting the testimony of Scott and Birdsong to go to the jury, which was to the effect that they had taken the two defendants to the place where Ewing, the main state witness, was in bed from the effect of the shooting, and that Ewing then and there identified them as the persons who participated in the shooting. Their objection was that Ewing's statement was not made under oath, that it was hearsay evidence, and, therefore, inadmissible. It is the general rule that hearsay evidence is not admissible in evidence, though there are exceptions to the rule. If a party out of court accuses another of crime or makes statements against him, in the hearing of a third party, and the accused remains silent, or does not deny the accusation or statements affecting vitally his interest under certain conditions, the hearsay evidence of the third party as to the statement out of court is competent. But it is permitted to go into the record as evidence only upon the presumption that the silence or failure to deny, on the part of the accused, is an admission. .. .
* * * * * *
We are of the opinion that the evidence was hearsay, and that the proof, at the time the objection was made and subsequent thereto, never did create what could possibly be construed as an admission on the part of the defendants; so that the objection to the evidence as presented was correct. The officers, Scott and Birdsong, were never asked whether or not the defendants made a response to the statement of Ewing or whether they remained silent." 171 Miss. at 47, 48-49, 156 So. at 646, 647.
We are not confronted here with a situation where an accused is in police custody thereby presenting the question of violation of his Fifth Amendment right to remain silent, such as occurred in Ivey v. United States, 344 F.2d 770 (5th Cir.1965) and McCarthy v. United States, 25 F.2d 298 (6th Cir.1928). We are unwilling, in this case, to change the long-established doctrine of admission by silence.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON, P.J., and SUGG, WALKER, and BROOM, JJ., concur in Parts I and II.
WALKER, J., specially concurs.
SMITH, J., INZER, P.J., and ROBERTSON, J., concur in Part I, but dissent as to Part II.
WALKER, Justice, specially concurring.
I agree with Parts I and II of the majority opinion, and, in particular, the discussion of the admission by silence doctrine.
I also agree with Justice Smith's dissenting opinion, except the statement that the controversial testimony does not involve the so-called "admission by silence rule." As I see the proposition, it does involve the rule in an indirect way.
The remainder of the dissenting opinion, in my view, properly analyzes the defendant's exculpatory statement that he had lost his ring squirrel hunting as well as its relevance and admissibility under the theory that the statement was a false and material representation bearing upon his guilt or innocence. This aspect of the troublesome testimony was not raised in the briefs and not discussed in the majority opinion. Other than these minor differences, the two *629 opinions are perfectly compatible; the majority discusses the admission by silence doctrine as it applies to the father's statement to the deputy; the dissent discusses the defendant's statement and why, under the circumstances, it was admissible. The Court's opinion does not hold that the defendant's statement was inadmissible. That question was not presented by the assignments of error.
SMITH, Justice, dissenting in part.
I respectfully disagree with the views expressed by the majority as to the competency of testimony relating to certain portions of a conversation which took place between the officers, appellant's father and appellant on the front porch of appellant's home.
It seems to be undisputed that appellant owned a gold ring engraved with the monogram "P." The testimony relative to the conversation between the officers and appellant's father, and the latter's contemporaneous conversation with his son, regarding the identification of such a ring found by the body, in my opinion, does not involve the so-called "admission by silence rule."
The officers had exhibited the ring discovered near the body to appellant's father in the presence of appellant who had joined them on the porch of his home, and asked the father if it was appellant's ring. The father stated that it was. The father then asked appellant if the ring were his. The appellant's reply to his father's question dealt with two relevant and material facts bearing upon appellant's guilt or innocence of the crime: (1) He admitted that he owned such a ring, but (2) He disclaimed the ring exhibited to him, saying that he had lost his own ring in the woods while squirrel hunting. The first amounted to an admission that he had in fact owned a similar ring. The second, obviously, is an assertion exculpatory in nature and amounted to an effort to disclaim the ring found near the body. The State offered evidence that the ring exhibited during this conversation was the ring found near the body of the deceased and witnesses identified it as being the ring which belonged to appellant. Appellant's assertion that he had lost his ring while hunting was relevant and material. Under the State's theory of the case, this was a false statement volunteered by appellant. It was competent for the prosecution to show that appellant had made this self-serving statement as to a material fact and that it was false. The jury had a right to consider this as a circumstance bearing upon the guilt or innocence of the appellant. It is very much as if a suspect volunteers a statement to officers by way of an alibi that he was at a certain place when the crime was committed. It would be competent to prove this statement and that it was false.
It was for the jury to say whether, under all of the circumstances in evidence, appellant had lost his ring where it was found near the body or had lost it in the woods as he asserted.
It is my opinion, therefore, that the testimony of the officers was competent and properly admitted, except the testimony of the officers as to the statement attributed by them to appellant's father in which, they testified, the father had said that the ring exhibited to him was his son's ring.
INZER, P.J., and ROBERTSON, J., join in this dissent.