# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-01512-SCT

*DERWIN ROGERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2002 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PAMELA A. FERRINGTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | RONNIE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/04/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND DICKINSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Derwin Rogers was indicted in 2002 by a Franklin County grand jury on four counts for the rape of A.H.[1]  The rape occurred on four separate occasions between December 21, 1989, and January 3, 1990.  A.H. was seventeen years old at the time.  The indictment charged a violation of Miss. Code Ann. § 97-3-67 (1985).  On the day of trial, the State

---

[1] The victim's name will be substituted for the initials A.H.

moved to amend the indictment to list Miss. Code Ann. § 97-3-65 (1985), instead of Miss Code Ann. § 97-3-67. Miss. Code Ann. § 97-3-67 had been repealed effective July 1, 1998. The State argued to the trial court that the surplus language requiring the victim to be of previous chaste character should be eliminated. The chaste character language was contained in the repealed statute Miss. Code Ann. § 97-3-67 (1985), and not in Miss. Code Ann. § 97-3-65 (1985). The trial court allowed the amendment.

¶2. Rogers was found guilty by a jury on all four counts of rape. The trial court sentenced Rogers to serve a term of thirty years on each count, to run concurrently. The trial court denied Rogers's motion for a new trial but granted his motion for indigent status and appointed counsel to perfect Rogers's appeal to this Court.

**FACTS**

¶3. In 1989, A.H. was a seventeen-year-old female placed in the foster care of Reverend David Franklin and his wife, Edna Franklin. A.H. lived in the group home, Project Gain, located in Jackson, Mississippi. During the Christmas holidays, the girls living at Project Gain had to find other accommodations because the Franklins went to Colorado during the Christmas holidays. A.H. was placed with the Franklins's friends, Reverend Derwin Rogers and his wife, in Meadeville, Mississippi, while the Franklins were away. Rogers lived in a house connected to his church. A.H. was staying at the Rogers's home between December 21, 1989, and January 3, 1990, when she was raped by Rogers.

2

¶4.     A.H. testified that Rogers forced her to have sex with him on four occasions during her stay in his home. A.H. testified that on each of the four occasions Rogers came into her bedroom and put a handgun to her head. He made her take off her clothes and have sex with him. Rogers told A.H. he would kill her and bury her in the backyard in the cemetery if she screamed or told anyone. A.H. testified that the sex was not consensual. A.H. testified that Rogers was always at the home and that Rogers controlled her access to avoid her telling anyone about the rape.

¶5.     Cindy Brasher, A.H.'s caseworker at the Mississippi Department of Human Services, testified that A.H. had tried to call her during the Christmas holidays, but she was not at home. When Brasher called A.H. back at Rogers's home, Rogers answered the phone. Brasher stated that she could tell A.H. was upset. However, A.H. told Brasher she could not talk to her.

¶6.     Reverend Franklin testified that when he and his wife returned from Colorado they picked A.H. up from Rogers's home. A.H. told him that Rogers had raped her on more than three occasions. However, Reverend Franklin testified quoting scripture that because Reverend Rogers was an "elder" in the church, he did not believe the allegation because there were no witnesses. He never confronted Rogers with the allegation, but he told A.H. she could report the rape to her caseworker.

¶7.     Brasher testified that she received a report on January 5, 1990, that A.H. alleged she had been raped. Brasher interviewed A.H. on January 9, 1990. A.H. informed her that

Rogers had forced her to have sex with him on four occasions between December 21, 1989, and January 3, 1990, describing the incidents including the threats to her life and the handgun. Brasher interviewed Rogers who initially denied that any sexual relation occurred with A.H. and denied that he possessed a gun. Later in the interview, Rogers showed Brasher the gun and stated that he had shown the gun to A.H.

## DISCUSSION

### I.      Ex Post Facto

¶8.      Rogers argues that the penalty for his crime was erroneously raised by the state and therefore, the trial court violated the *expost facto* clause of the Constitution by imposing a thirty year sentence pursuant to Miss. Code Ann. § 97-3-65. First, Rogers waived this issue for consideration on appeal by not raising a constitutional challenge at trial. Rogers is now procedurally barred from raising this issue on appeal. This Court has consistently held that constitutional questions not raised at the lower court will not be reviewed on appeal. *Stockstill v. State,* 854 So. 2d 1017, 1023 (Miss. 2003); *Ellis v. Ellis,* 651 So. 2d 1068, 1073 (Miss. 1995); *Patterson v. State,* 594 So. 2d 606, 609 (Miss. 1992). These constitutional questions are waived or forfeited if not asserted at the trial level. *Contrevas v. State,* 445 So. 2d 543, 544 (Miss. 1984). As such, attacks on the constitutionality of a statute cannot be considered for the first time on appeal. *Colburn v. State,* 431 So. 2d 1111, 1113 (Miss. 1983); *Smith v. State,* 430 So. 2d 406, 407 (Miss. 1983).

4

¶9.    Second, the record reflects that the defense did not raise *any* objection to the amendment of the statute contained in the indictment. Rather, the defense sought clarification that because these were charges of forcible rape the defense of consent would be applicable at trial under Miss. Code Ann. § 97-3-65. The trial court determined that because the indictment charged forcible rape and Miss. Code Ann. § 97-3-67 had been "recalled," the amendment to Miss. Code Ann. § 97-3-65 (1985) was applicable. The trial court clarified that the State would be required to prove forcible rape, and consent would be a defense to the charges. The trial court stated that the allegations were not amended. The original indictment stated that Rogers engaged in sexual penetration with A.H. without her consent and against her will. The defense did not contest the amendment, object or argue that Miss. Code Ann. § 97-3-67 (1985) was applicable.

¶10.    Without waiving any procedural bar, this assignment of error is also without merit and will be briefly addressed. The facts demonstrate that Miss. Code Ann. § 97-3-65 (1985) was applicable and the sentence was within the limits allowed by that statute. The version of Miss. Code Ann. § 97-3-65 (1985) in effect during 1989 and 1990 made it a crime to forcibly ravish any person over the age of fourteen. The penalty available was life, if the jury so prescribed by its verdict, or a sentence to any term determined by the trial court if the jury did not return a verdict of life. Nothing in that language prohibited the trial court from sentencing Rogers to thirty years.

¶11.    Specifically, Miss. Code Ann. § 97-3-65(2) (1985) provided:

5

Every person who shall forcibly ravish any person of the age of fourteen (14) years or upward, or who shall have been convicted of having carnal knowledge of any person above the age of fourteen (14) years without such person's consent shall be imprisoned for life in the State Penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the State Penitentiary for any term as the court, in its discretion, may determine.

¶12. As a general rule, this Court cannot disturb a sentence on appeal if that sentence is within the boundaries allowed by the statute. *Hoops v. State,* 681 So. 2d 521, 537 (Miss. 1996). Here, the sentence imposed by the trial court was acceptable as it did not exceed the statutory limits provided in Miss. Code Ann. § 97-3-65 (2). *See Wilkerson v. State,* 731 So. 2d 1173, 1183 (Miss. 1999); *see also Freshwater v. State,* 794 So. 2d 274, 277 (Miss. Ct. App. 2001); *Shabazz v. State,* 729 So. 2d 813, 822 (Miss. Ct. App. 1998). Therefore, Rogers' argument that he was sentenced to more time than was applicable at the time of his offense is without merit.

## II. Age of the Victim

¶13. Rogers argues on appeal that the State was required under Miss. Code Ann. § 97-3-65 (1985) to establish that the victim was between the ages of fourteen and sixteen but failed to do so. First, Rogers is incorrect in stating that Miss. Code Ann. § 97-3-65 requires that it be established that the victim was between the ages fourteen and sixteen. The section that Rogers cites applies to statutory rape, not forcible rape. However, this case involved forcible rape without consent and against the victim's will as discussed in Issue I.

¶14. Second, the record reflects that the State established that at the time of the incident in December 1989, A.H. was at least fourteen years old. A.H. affirmed that she was at least fourteen years old at the time, and she stated that she was seventeen years old when the rape occurred. The defense raised no objection in the record regarding A.H.'s age.

¶15. The State further questioned A.H. regarding the incident. The record reflects the following exchange:

Q. And so what happened when you came to stay with Derwin Rogers in December of 1989?
A. He molested me.
Q. Okay. Could you explain to the jury what you mean by that, [A.H.]?
A. On four separate occasions, he forced me to have sex with him. He had a gun. He would come to my bedroom at night, and he would make me have sex with him.
Q. And on those occasions, did he penetrate you?
A. Yes.
Q. Now, you said that he would come to your bedroom. Could you explain to the jury where your bedroom was located in relation to the rest of the house?
A. It was kind of like on the - - it was like the back bedroom from the kitchen.
Q. Okay. And let's talk about the first time that it happened. Do you remember about what day it was the first time that it happened?
A. I don't remember the date, what it was - -
Q. Okay. But you remember that you got there on December the 21st?
A. Right.
Q. And where were you when it happened the first time?
A. In the bedroom.
Q. I want you to tell the jury what happened the first time.
A. The first time he came in there, he had a little gun, a little hand pistol in his hand, and he put it to my head and he told me if I screamed, if I made any kind of noise, that he would kill me and he made me take my clothes off, and he took his clothes off, and he made me have sex with him.
Q. And what happened after that?

7

A.	He would get up and get dressed, and he would leave out, and he'd tell his wife that he was at the church because the church and the house was connected, but he would really be leaving out of my bedroom.

Q.	Could you tell us what happened on the second occasion?

A.	All of them was just about alike. He would come in there with a pistol. Each time he had the gun, he would either hold it in his hand and put it to my head, or he would have it laying on the pillow close to my head, and he would always tell me if I made any kind of noise, he would kill me and bury me in the backyard in the cemetery, and I never knew there was a cemetery back there, but he would always tell me he would bury me in the backyard in the cemetery.

Q.	Were you afraid of him?

A.	Yes.

¶16.	Clearly, the State established through A.H.'s testimony that A.H. was age fourteen or upward when the incident occurred and that it was forcible, without her consent, and against her will. *See* Miss. Code Ann. § 97-3-65(2) (1985). This assignment of error is without merit.

### III.	Closing Argument

¶17.	Rogers contends on appeal that the State in its closing remarks improperly commented on his failure to testify at trial. First, examination of the record reveals that the defense never raised any contemporaneous objection to the statements in question. Therefore, this assignment of error is procedurally barred. *See **Walker v. State,*** 671 So. 2d 581, 597 (Miss. 1995) ("If no contemporaneous objection is made, the error, if any, is waived.").

¶18.	Second, without waiving the procedural bar, Rogers takes the statements out of context. The record reflects that the State's remarks concerned the testimony of Reverend David Franklin, A.H.'s former foster parent and Rogers' friend. Reverend Franklin testified

8

that several years later in 1996 Rogers admitted to him in a telephone conversation that he had sexual relations with A.H. when she was seventeen. Shortly after that telephone conversation, a meeting occurred between Reverend Franklin, Franklin's wife, Edna, Rogers' wife, Donna, and Pastor Henry Hankins at Pastor Hankins's church. The night before the meeting transpired, Pastor Hankins met with Reverend Franklin and his wife, Edna, and told them that Rogers had confessed to his wife, Donna, that he had sex with A.H. Rogers and Rogers' wife, Donna, were present during this conversation. Rogers never denied the statement. Reverend Franklin testified that Rogers had told him the information so that Reverend Franklin could go and "console" A.H.

¶19. The State's closing remarks were made in reference to the facts in evidence, not Rogers' failure to testify at trial or that he was guilty based on his failure to testify. Here, the State conformed the closing remarks to the facts introduced into evidence. Clearly, the evidence introduced supports the State's comments in closing argument; therefore, the remarks were proper. *Davis v. State,* 643 So. 2d 656 (Miss. 1996) (prosecutor may comment upon any facts introduced into evidence and draw whatever deductions seem proper from those facts). This assignment of error is without merit.

### IV. Reverend Franklin's Testimony

¶20. Rogers argues that the trial court erred in allowing Reverend Franklin to testify about a conversation Pastor Hankins had with him regarding Rogers's admission that he had sex with A.H.

9

## A.    Priest - Penitent Privilege

¶21.    Rogers contends on appeal that M.R.E. 505 prevented Reverend Franklin from disclosing the conversation as it was a confidential communication protected by priest-penitent privilege.    However, the record does not reflect that Rogers raised any contemporaneous objection at the trial level regarding any alleged priest-penitent privilege or M.R.E. 505. *See Walker,* 671 So. 2d at 597 (contemporaneous objection required or error, if any, is waived). No objection at all was made when Reverend Franklin testified regarding Rogers's admission to him in a telephone conversation that Rogers had sex with A.H.  The only objection made was a hearsay objection regarding the statement by Pastor Hankins to Reverend Franklin which will be discussed as a separate assignment of error.

¶22.    Therefore, without waiving any procedural bar stemming from the lack of any contemporaneous objection, examination of the record reveals that the disclosure by Pastor Hankins to Reverend Franklin was not confidential.  At the time the disclosure was made, Pastor Hankins, Reverend Franklin, Reverend Franklin's wife, Edna, Rogers's wife, Donna, and Rogers were all present.  Rogers never took any action to prevent the disclosure or to deny or correct the disclosure.  Furthermore, the information regarding the admission by Rogers that he had sex with A.H. had already been disclosed by Rogers to Reverend Franklin in a telephone conversation approximately two weeks before this meeting occurred. Reverend Franklin testified that at the time of the disclosure he did not consider himself to be serving in any capacity as a pastor to Rogers and did not consider Rogers to be his

10

parishioner or penitent at the time. He also stated that he did not consider the conversation to be any type of confession to a preacher.

¶23. M.R.E. 505(2)(b) requires that in order for a privilege to exist the communication must have been made to a clergyman in his professional character as spiritual adviser. *See Roman Catholic Diocese of Jackson v. Morrison,* 905 So. 2d 1213, 1246 (Miss. 2005). "A person has a privilege to refuse to disclose and prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser." M.R.E. 505(2)(b). Reverend Franklin testified that he did not consider himself to be Rogers' spiritual adviser nor that the communication was made to him as a confidential confession. Rogers disclosed the same information directly to Reverend Franklin before Reverend Franklin spoke with Pastor Hankins. The disclosure was the same information regarding Rogers's admission that he had sex with A.H. The evidence does not reflect that a priest - penitent privilege existed between Reverend Franklin and Rogers.

¶24. Furthermore, Pastor Hankins' disclosure to Reverend Franklin was clearly not confidential. M.R.E. 505(2) states that "a communication is '*confidential*' if made privately and not intended for further disclosure except in furtherance of the purpose of communication." Disclosure of confidential information or communication in the presence of third parties generally operates to waive any privilege. *See Hewes v. Langston*, 853 So. 2d 1237, 1264 (Miss. 2003) (as applied to M.R.E. 502, lawyer-client privilege).

¶25. As previously stated, Reverend Franklin's wife, Edna, among others, were present when the statement was made. Rogers was also present, and he took no action to prevent the disclosure or make any claim that any priest-penitent privilege existed. Furthermore, according to Reverend Franklin's testimony, the stated purpose of the disclosure was for Reverend Franklin to "console" his "daughter [A.H.]" for what had occurred. The evidence does not reflect that the communication was intended to be confidential or that it was made in a confidential manner. This assignment of error is without merit.

### B. Hearsay

¶26. Rogers raises on appeal that his constitutional right of confrontation was violated by the trial court allowing Reverend Franklin to testify as to Pastor Hankins's disclosure that Rogers admitted he had sex with A.H. However, the record reflects that Rogers did not raise any objection at trial regarding any constitutional claim of a violation arising from the testimony. In fact, the record contains no reference to any alleged violation of any right to confrontation or for the trial court to make a ruling regarding the confrontation clause. Therefore, any argument on appeal as to the confrontation clause is procedurally barred. *See Stockstill,* 854 So. 2d at 1023 (constitutional questions not raised at the trial court are barred from our review on appeal); *see also Contrevas v. State,* 445 So. 2d at 544 (constitutional questions are waived or forfeited if not asserted at the trial level).

¶27. While not waiving any procedural bar regarding Rogers's assignment of error on appeal involving the confrontation clause, the trial court's ruling to allow the hearsay

12

testimony will be briefly examined. Though discussed previously in great detail, the facts from the record relevant to this discussion will be examined. Rogers's admission to Reverend Franklin and Pastor Hankins that he had sex with A.H. were not admissions that he raped A.H. Also, Rogers made the same admission, as to having had sex with A.H., to Reverend Franklin in a telephone conversation that occurred approximately two weeks prior to the meeting that occurred between Reverend Franklin and Pastor Hankins. Furthermore, Reverend Franklin and Pastor Hankins were not alone at the meeting when the statement was made. As discussed previously, along with Reverend Franklin and Pastor Hankins, Edna Franklin, Donna Rogers, and the defendant, Rogers, were all present.

¶28. Rogers never took any action to prevent the statement from being made public or made any attempt to clarify the statement or to state that it was untrue. Reverend Franklin did not testify that Rogers ever admitted that he raped A.H. The record reflects that the defense's theory of the case in its opening statement was that no rape occurred and that any admission of sex was regarding consensual sex. In the defense's opening statement, the defense referenced an admission Rogers made to a reverend and his wife that Rogers had sex with A.H. The defense stressed that it was not an admission of rape.

¶29. The trial court required extensive questioning to ensure the record was clear that Rogers was present when the statement was made, and Rogers took no action to deny the statement. The trial court then overruled the hearsay objection as to any statement made by

13

Pastor Hankins to Reverend Franklin, which was limited to statements made while Rogers was present.

¶30.   In *Pickle v. State,* 345 So. 2d 623, 627 (Miss. 1977), a pre-rules case, this Court acknowledged admission by silence stating that where the accused "with full liberty to speak, remains silent . . ., his failure to reply or to deny the accusation is relevant as tending to show his guilt."  In *Pickle,* the accused did not remain silent; he denied the accusation.  *Id.*  The Court found that the denial was inadmissible based on the accusation being denied.  *Id.* However, the Court held:

> Had appellant remained silent, an exception to the hearsay rule would have arisen, and the statement would have become admissible under the admission by silence doctrine as would the fact that appellant remained silent.

*Id.* at 627.

¶31.   M.R.E. 801(d)(2)(B) states that admission by silence is a hearsay exception where "the statement is offered against a party and is a statement of which he has manifested his adoption or belief in its truth."  The comments to M.R.E. 801(d)(2)(B) provide:

> If a party adopts or acquiesces in another person's statement, it will be deemed that the statement is indeed his admission . . . . silence may constitute a tacit admission if a person would have, under the circumstances, protested the statement made in his presence if the statement were untrue.

*See Howell v. State*, 860 So. 2d 704, 735 (Miss. 2003).

¶32.   In *Howell*, the Court held that the trial court did not err in allowing Shaw to testify about Ray's statement where Howell was present when the statement was made and did not dispute the statement.  *Howell*, 860 So. 2d at 735-36.  The Court stated that the statement

14

clearly amounted to an "adoptive admission" pursuant to M.R.E. 801(d)(2)(B). *Id*. at 735. In that case, the Court found that the record demonstrated Howell did not contradict, deny or object to the statement Ray made to Shaw. *Id*. at 736.

¶33. The trial court made clear on the record that the discussion would be allowed only as to what was said while Rogers was present. The record reflects that Rogers was present and took no action to deny or prevent the disclosure. Furthermore, Reverend Franklin had already testified as to a telephone conversation in which Rogers had earlier made the same disclosure to him. Therefore, without waiving any procedural bar as to the confrontation clause, the assignment of error regarding the hearsay testimony is without merit.

## CONCLUSION

¶34. Therefore, for all the reasons stated above, the conviction and sentence of the Circuit Court of Franklin County, Mississippi, is affirmed.

¶35. **COUNT I: CONVICTION OF RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IV: CONVICTION OF RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAYMENT OF ALL COSTS, AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONCURRENTLY WITH THE SENTENCES IN COUNTS II, III AND IV.**

**SMITH, C.J., WALLER, P.J., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

15