KITCHENS, Justice,
dissenting:
¶ 193. Though not alleged in the indictment, the State chose to proceed on the theory that Roger Gillett committed capital murder by killing Linda Heintzelman and Vernon Hulett while robbing Heintzel-man of her Dodge pickup truck. At trial, the State failed to adduce even the slightest evidence that the taking of the truck was in any way related to the murders. Having failed to prove that Gillett robbed Heintzelman of her vehicle, or that the murders were committed “during the commission of’ this alleged robbery, this conviction of capital murder should not stand. Accordingly, I respectfully dissent and would reverse Gillett’s conviction.
¶ 194. However, even if the State had proven that a robbery occurred, and that the robbery and murders constituted a “continuous transaction” sufficient to prove capital murder, the Court would be required to reverse the sentence of death for two additional reasons. First, the majority correctly finds that it was error for the jury to consider a previous violent felony as an aggravator, but concludes that the error was harmless. I respectfully disagree that such error can be harmless, as we are an appellate court without authority to i-eweigh aggravating and mitigating circumstances. That is the business of juries, not jurists. Any legislative mandate to the contrary is an unconstitutional directive on a purely judicial prerogative.
*530 ¶ 195. Second, as with the robbery ag-gravator, the State failed to adduce any proof that Gillett committed the murders in an effort to avoid arrest. Indeed, the State did not contend that Gillett’s motive in killing his victims was to avoid apprehension by authorities. Therefore, it was error to instruct the jury to consider this as an aggravating circumstance.
¶ 196. A death sentence based on three invalid aggravating factors should be reversed.
I.
¶ 197. The State attempted to prove that the murders occurred while “engaged in the commission of’ a robbery, and that the property that was the object of the robbery was Heintzelman’s truck. Miss. Code Ann. § 97-3-19(2)(e) (Rev.2006). Robbery requires “(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property from his person or in his presence.” Lima v. State, 7 So.3d 903, 909 (Miss.2009) (quoting Walker v. State, 913 So.2d 198, 224 (Miss.2005)). While it is true that “the intent to rob ... can be shown from the facts surrounding the crime,” Lima, 7 So.3d at 909, there must be an evidentiary basis for such intent, and a jury is not permitted to rely on mere speculation or conjecture. Brazzle v. State, 13 So.3d 810, 818 (Miss.2009).
¶ 198. Gillett argues that the State failed to meet its burden of providing such an evidentiary basis because there was no proof that he or his codefendant had formed the intent to rob Heintzelman of her truck before the murders took place. The majority rejects Gillett’s claim by concluding that there was evidence that the taking of the truck and the murders were parts of the same “continuous chain of events,” yet the facts in evidence indicate an obvious break in the chain.
¶ 199. According to the State’s evidence, the murders occurred on or about March 20, 2004; but Gillett and his co-defendant, Lisa Jo Chamberlin, did not remove Heintzelman’s truck from the residence until days later. There was uncontradicted testimony that Gillett and Chamberlain remained in Hattiesburg for days following the murders, visiting relatives and attending to other matters, while the truck remained in its owner’s driveway.
¶ 200. Hulett’s nephew, Michael Hester, testified that he visited his uncle’s home on March 20, and although Heintzelman’s truck was in the driveway, only Gillett and Chamberlin were present. Gillett told Michael that Heintzelman and Hulett had taken a trip to the Gulf Coast. On March 21, Michael again visited his uncle’s house, and again, Gillett and Chamberlin were the only persons present. On this occasion, he noticed that the living room carpet was missing. Gillett told Michael that Hu-lett had come into some money while on the Coast and would be bringing new carpet back with him.
¶ 201. That afternoon, Gillett and Chamberlin walked to Michael’s house, where he lived with his grandmother, Caroline Hester. Ms. Hester was Gillett’s aunt and Hulett’s mother. While at the Hester home, Gillett offered to sell Michael the stereo from Chamberlin’s wrecked vehicle. Michael accepted the offer, and Gillett and Michael then moved the stereo from Chamberlin’s ear to Michael’s car. Gillett and Chamberlin ate dinner with the family before leaving.
¶ 202. Two days later, on March 23, Gillett and Chamberlin returned to the Hester home. Gillett finished installing the car stereo and played basketball with Michael while Chamberlin took a shopping *531 trip to Wal-Mart with Ms. Hester. Just as they had two days before, Gillett and Chamberlin ate dinner with the family before returning to Hulett’s and Heintzel-man’s residence.
¶ 203. The next time anyone heard from or saw Gillett and Chamberlin was on March 26, 2004. That night, Gillett called Ms. Hester and told her that Hulett and Heintzelman had driven him and Cham-berlin to Kansas. Gillett was indeed in Kansas; however, Gillett was driving Heintzelman’s truck, and her and Hulett’s corpses were in a freezer in the back of the truck. On March 26, Gillett met two of his friends at a gas station in Victoria, Kansas, and told one of them that “he had taken the pickup and the owners were in the back of it.” Gillett then asked whether he could store the truck at his friend’s house and said that “he needed help to get rid of [it] ... because there was [sic] two bodies in the back.”
¶ 204. These facts do not support a conviction of capital murder on the theory that Gillett murdered Heintzelman and Hulett while robbing Heintzelman of her truck. Multiple activities and events, disconnected from and unrelated to the homicides, transpired over a period of several days before the defendants departed the victims’ residence in Heintzelman’s pickup truck. The State has proven absolutely no connection between the killing of the two victims and the theft of the vehicle. Therefore, it cannot be said that the defendants took the vehicle from the presence or person of Heintzelman or Hulett as part of a “continuous chain of events.” The State may have proven that Gillett and Chamberlin killed two people. The State also may have proven that these defendants stole a truck that belonged to one of these decedents, a crime commonly known as auto theft. Miss.Code Ann. § 97-17-42 (Rev.2006). What the State has not proven is that they killed anyone while “engaged in the commission of ... robbery.” Miss.Code Ann. § 97 — 3—19(2)(e).
¶ 205. One of the first cases to address this issue was Pickle v. State, 345 So.2d 623 (Miss.1977). Pickle was convicted of capital murder for killing during the commission of a rape. Id. The victim was found nude from the waist down, and forensic evidence revealed that she had been raped before being shot in the chest. Id. at 625. On appeal, Pickle argued that to sustain a conviction for capital murder, the State was required to prove that the victim’s death occurred during the rape. Id. This Court looked to outside authorities, including a general discussion from the legal encyclopedia American Jurisprudence, and held that “where the two crimes are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained.” Id. at 627.
¶ 206. As the majority notes in footnote 13 of today’s opinion, the Pickle decision included language from American Jurisprudence that “[t]he felony-murder doctrine does not apply, however, when the determination to steal property of the victim is not formed until after the homicide.” Id. at 626 (quoting 40 Am.Jur.2d Homicide § 73 (1968)). The majority then states that the Pickle court was not adopting the law as defined by American Jurisprudence. While the particular sentence in question was dictum, this Court did rely on American Jurisprudence in formulating its ultimate holding. Moreover, this Court has since adopted similar language from that very block quote and has held that “the underlying crime begins where an indictable attempt is reached.” Goff v. State, 14 So.3d 625, 650 (Miss.2009) (quoting Pickle, 345 So.2d at 626) (quoting 40 Am.Jur.2d Homicide § 73). See also, e.g., Moody v. State, 841 So.2d 1067, 1091 *532 (Miss.2003) (quoting same); Simmons v. State, 805 So.2d 452, 477 (Miss.2001) (quoting same); Duplantis v. State, 708 So.2d 1327, 1342 (Miss.1998) (quoting same).
¶ 207. Attempt to commit a crime requires an intent to commit the crime. Brooks v. State, 18 So.3d 833, 841 (Miss.2009) (citing Hughes v. State, 983 So.2d 270 (Miss.2008); Miss.Code Ann. § 97-1-7 (Rev.2006)). Therefore, if “the underlying crime begins where an indictable attempt is reached,” the underlying crime cannot have begun until criminal intent is formed. Goff, 14 So.3d at 650. In other words, “[t]he felony-murder doctrine does not apply ... when the determination to steal property of the victim is not formed until after the homicide.” Pickle, 345 So.2d at 626 (quoting 40 Am.Jur.2d Homicide § 73, at 366-67).[26] Here, obviously, a significant period of time passed between the homicides and the theft of the vehicle.
¶ 208. This Court has addressed the issue of intent in several cases involving capital murders based on killings committed during the commission of robbery. Consistently, this Court has held that a jury reasonably could infer that intent to rob existed at the time of the murders only when the killing and the taking of the property occurred simultaneously, or when the acts occurred within mere moments of each other. See, e.g., Lima, 7 So.3d at 909 (defendant took property from the victim’s pockets as he lay dying); Shaw v. State, 915 So.2d 442, 449 (Miss.2005) (defendant robbed the victim “immediately after” shooting him); Walker v. State, 913 So.2d 198, 212, 223 (Miss.2005) (defendant took due. victim’s car immediately after the killing, and defendant confessed that his intent was to rob the victim); Knox v. State, 805 So.2d 527, 530-32 (Miss.2002) (defendant was found carrying victim’s keys the same day she was murdered); Simmons, 805 So.2d at 470, 477-78 (Miss.2001) (immediately after shooting victim, defendant took victim’s companion’s clothes and jewelry); Duplantis, 708 So.2d at 1341 (defendant took the victim’s property “immediately following” the victim’s death); West v. State, 463 So.2d 1048, 1050-51, 1055 (Miss.1985) (killing occurred while defendant and his accomplice were robbing victim of his vehicle, although the vehicle was not taken until victim was dead).
¶ 209. In the instant case, there was a clear break between the killings and the taking of the truck. Hulett and Heintzel-man were killed on March 20, 2004, but Gillett and Chamberlin remained in Hat-tiesburg for days afterward. While Heint-zelman’s truck remained in her driveway, Gillett and Chamberlin visited relatives, went shopping, played basketball, installed a car stereo, and had several meals. There was no evidence that Gillett or Chamberlin took possession of the truck until they fled Hattiesburg on or shortly before March 26. Unlike the cases cited above, the time between the killing and the taking of the property was significant, and it cannot be said that “the intervening time between the time of the murder and the time of taking of the property formed a continuous chain of events.” West, 463 So.2d at 1055 (Miss.1985). Therefore, the *533 State failed to prove capital murder, and Gillett’s conviction should be reversed.
II.
¶210. Even if the State had met its burden of proof in the guilt phase of the trial, reversal of the death sentence still would be required. The majority correctly finds that the jury should not have been allowed to consider that Gillett previously had committed a violent felony, but finds such error harmless. I respectfully cannot agree, for in the face of even a single invalid aggravating circumstance, this Court does not have the authority to determine that the penalty of death is appropriate.[27]
¶ 211. Although the legislature has “instructed” this Court to perform a reweighing or harmless-error analysis upon finding an invalid aggravator, such a mandate is an unconstitutional infringement on judicial prerogatives. See Miss. Const. art. 1, §§ 1, 2 (providing for separation of governmental powers); Miss. Const, art. 6, § 144 (“The judicial power of the State shall be vested in a Supreme Court and such other courts as are provided in this Constitution.”); Miss. Const. art. 6, § 146 (“The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals.... ”).[28] See also, e.g., Long v. McKinney, 897 So.2d 160, 183 (Miss.2004) (“[Tjhis Court has been charged with the responsibility, and granted the authority, over all things judicial within this state.”); Newell v. State, 308 So.2d 71, 76 (Miss. 1975) (“[The Mississippi constitution] leaves no room for a division of authority between the judiciary and the legislature as to the power to promulgate rules necessary to accomplish the judiciary’s constitutional purpose.”). Only a unanimous jury may impose a sentence of death, and it must do so in writing, specifying that sufficient aggravating circumstances exist and that these are not outweighed by any mitigating circumstances. Miss.Code Ann. § 99-19-101(3) (Rev.2007). Such power is properly left in the hands of a jury before whom the case is tried, and not an appellate court.
¶212. The constitutionality of Mississippi Code Section 99 — 19—105(3)(d) notwithstanding, reversal is required because the State failed to adduce sufficient proof of three of the four aggravating circumstances considered by the jury. First, as discussed above, there was no proof — only argument — that the killings were committed during the commission of a robbery. Miss.Code Ann. § 99 — 19—101(5)(d). Second, as the majority recognizes, there was no proof that Gillett previously had committed a violent felony. Miss.Code Ann. § 99 — 19—101 (5) (b). Third and finally, nothing in the record supports a finding that Gillett and Chamberlin committed the murders “for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.” Miss.Code Ann. § 99-19-101(5)(e).
¶213. At the sentencing hearing, the State did not present any new evidence *534 beyond what had been adduced during the guilt phase. In opening and closing arguments, the prosecutor made absolutely no assertion that Heintzelman and Hulett were killed so that Gillett and Chamberlin might avoid apprehension. The State argues on appeal that it was reasonable to conclude that the victims were murdered “to avoid any investigation into the robbery.” This would require a finding that Gillett and Chamberlin first robbed the couple and then killed them in order to eliminate witnesses to the robbery. But, as discussed previously, there is zero evidence that Gillett and Chambeiiin took anything belonging to the victims before March 26, nearly a week after their deaths.
¶ 214. The majority relies on Leatherwood v. State, 435 So.2d 645, 651 (Miss.1983), for the proposition that “it may be reasonably inferred that a substantial reason for killing was to conceal the identity of the killer or killers or to ‘cover their tracks’ so as to avoid apprehension and eventual arrest by authorities.” However, in the Leatherwood case, there was testimony that the defendant and his accomplices planned to “leave no witnesses.” Id.
¶ 215. In the instant case, there was no similar evidence. To the contrary, the only evidence of Gillett’s motive was that he was angry at Heintzelman and Hulett due to their involvement in an automobile accident. Because the State failed to adduce even a scintilla of evidence that Gil-lett and Chamberlin had been killed to avoid arrest, it was error to submit this aggravator to the jury. Taylor v. State, 672 So.2d 1246, 1275-76 (Miss.1996).
III.
¶ 216. For purposes of capital murder, “in the commission of’ requires, at minimum, some temporal relationship between one of the enumerated felonies and the killing. Unlike any other case this Court has reviewed, the State presented no evidence that Gillett or his codefendant had formed an intent to take the property at issue at the time of the killings. To the contrary, the uncontradicted evidence indicates that Gillett and Chamberlin killed their victims days before taking possession of the truck. Thus, the jury could only speculate regarding the defendants’ criminal intent at the time of the killings, and speculation alone will not support a verdict.
¶ 217. As for the death sentence, it too fails appellate review. In cases involving the death penalty, heightened scrutiny requires reversal on even one invalid aggra-vator, and any legislative mandate to the contrary is an unconstitutional encroachment on judicial authority. Yet, in the instant case, three of the four aggravating circumstances were impermissibly presented to the jury. Therefore, even if there were sufficient evidence to support a conviction for capital murder, the sentence would have to be reversed.
¶ 218. For these reasons, I respectfully dissent.
DICKINSON, J., JOINS PART II OF THIS OPINION.

. The current version of American Jurisprudence does not contain the language that "the felony-murder doctrine does not apply, however, when the determination to steal property of the victim is not formed until after the homicide.” 40 Am.Jur.2d Homicide § 39 (2008). Interestingly, however, the encyclopedia relies on this Court's holding in Pickle for the proposition that "[g]enerally, to sustain a conviction of murder in the first degree under a felony-murder statute, it must be shown that there is a direct causal relationship between the homicide and the commission of the other felony.” Id. (citing Pickle, 345 So.2d 623).

. I join Justice Lamar’s separate opinion in part, only to the extent that she would reverse Gillett’s death sentence.

. In 1994, following this Court's announcement in Clemons v. State, 593 So.2d 1004 (Miss. 1992), that it was without statutory authority to reweigh aggravating and mitigating circumstances, Mississippi Code Section 99-19-105 was amended to provide:
Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.
Miss.Code Ann. § 99-19-105(3)(d).