STATE OF NEBRASKA, APPELLEE, v. LEROY MONTGOMERY, APPELLANT.

215 N. W. 2d 881

Filed March 14, 1974. No. 39133.

Frank B. Morrison, Sr., and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, and CLINTON, JJ., and FLORY, District Judge.

CLINTON, J.

The defendant was charged under the provisions of

section 28-401, R. R. S. 1943, with having killed John R. Wisotzkey while in the perpetration of a robbery. He was found guilty by a jury and punishment was fixed at life imprisonment. The court pronounced sentence in accordance with the verdict.

On this appeal the error assigned is that the court improperly refused to submit instructions which would have permitted the jury to find the defendant guilty of the lesser crimes of second degree murder or manslaughter.

The instruction given by the court properly defined the murder as a killing while in the perpetration of a robbery and appropriately defined robbery and all the elements thereof. The effect of the instructions was that the jury had two choices. It could find the defendant guilty as charged, or not guilty.

The defendant's position is that he intended only to "rough up" Wisotzkey, that when the assault began he had no intention to rob him, and that the robbery was the result of a spontaneous afterthought occurring after the fatal blows had been struck.

There is no important conflict as to what occurred. The defendant was a close associate of Teri Lynn Perkins who had on the night in question engaged in an act of prostitution with Wisotzkey. According to the testimony of Teri, Wisotzkey refused to pay her fee and attempted to choke her. When Teri came from the hotel where she and Wisotzkey had been, the defendant, two male companions, and one Patty Moore were waiting in the defendant's vehicle. She knew they were waiting for her. She told the defendant what had occurred and asked the defendant to get her money. He agreed. About this time the defendant and his companions removed an automobile jack handle and a bayonet from the trunk of the defendant's car and placed them inside the auto. When Wisotzkey came from the hotel he got into his own automobile and pulled away.

The defendant and his companions, together with Teri, followed. They forced the Wisotzkey car from the Interstate highway, stopped their own car, and got out, taking the jack handle and bayonet with them. One of the defendant's companions broke the window on the driver's side of the Wisotzkey automobile. The defendant, carrying the bayonet, went around to the other side of the Wisotzkey car and opened the door. Then an assault took place. The defendant acknowledges that he alone had the bayonet in his hands, but testified that the multiple, deep, serious stab wounds suffered by the victim were accidentally inflicted in the course of the beating administered to Wisotzkey by the defendant's companions. He stated he had no thought of robbing Wisotzkey until he saw the victim's billfold in the left rear pocket of the victim's trousers. While his companions continued to beat Wisotzkey the defendant removed the billfold. He admitted he received the money it contained. He testified that the stab wounds must have occurred before he removed the billfold. He stated that at no time had he intended to kill Wisotzkey.

Following the assault the defendant and his companions left. Wisotzkey, despite the serious wounds about his head and body, was able to get himself out of the car and summon help from a passing motorist. Wisotzkey died a short time later in a hospital. The cause of death was shock resulting from his various injuries which included not only the stab wounds, but injuries inflicted from other blows.

In the foregoing state of the evidence the court was not required even upon request to instruct the jury on second degree murder or manslaughter. Even accepting the defendant's testimony at face value, as we must on this appeal, the uncontradicted evidence establishes

a killing while in the "perpetration of a robbery."

No specific intention is required to constitute felony murder other than the intent to do the act which constitutes the felony in question. In this instance that was the robbery. There is no requirement in the statute that the intent to rob be formed at any particular time as long as the killing occurs as the result of acts committed while in the perpetration of the robbery.

In Garcia v. State, 159 Neb. 571, 68 N. W. 2d. 151, this court stated: "In MacAvoy v. State, 144 Neb. 847, 15 N. W. 2d 45, we said: '. . . If a killing is committed within the res gestae of the felony charged it is committed in the perpetration of, or attempt to perpetrate, the felony, within the meaning of the statute.' See, also, Francis v. State, 104 Neb. 5, 175 N. W. 675." We further said: "(W)e held in Thompson v. State, 106 Neb. 395, 184 N. W. 68: 'An information charging defendant with a homicide committed in the perpetration of or attempt to perpetrate a robbery, . . . charges only murder in the first degree, and it is error for the trial court to instruct the jury that they may find defendant guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter.' See; also, Morgan v. State (51 Neb. 672, 71 N. W. 788); Davis v. State, 116 Neb. 90, 215 N. W. 785." We also said: "It is sufficient if death occurs unexpectedly and without design if it occurs while the party or parties charged are in the perpetration of, or an attempt to perpetrate, one of the acts set out in the statute."

This is not to say, of course, there might not occur a set of facts under which an instruction on the lesser offenses of second degree murder or manslaughter might not be appropriate. Such a situation might be under circumstances where there is a time lag between an assault clearly complete which results in death and the robbery, and where the evidence justifies the conclusion that robbery indeed was an afterthought and the

assault itself was not the direct means of perpetrating the robbery. In this case, however, we have an absolute coincidence of the assaults and the robbery. The assaults were clearly the means by which the robbery was accomplished.

The statutory language "in the perpetration" is significant. It seems clearly to connote a purpose to cover situations where the intention to commit the underlying felony is formed antecedent to or contemporaneously with acts which result in the killing. This has been recognized by other courts. In Commonwealth v. Butcher, 451 Pa. 359, 304 A. 2d 150, the court discussed its reasons for rejecting the proposition that the intent to rob must have preceded the assault. "As stated in Commonwealth v. Tomlinson (466 Pa. 241, 284 A. 2d 687 (1971)), 'This Court has several times decided that if a homicide occurs in the perpetration of or attempt to perpetrate a robbery or other statutorily-enumerated felonies, a conviction of murder in the first degree will be sustained regardless of when the design to commit the robbery or other felony was conceived or the felony committed.' 446 Pa. at 246-247, 284 A. 2d at 690.

"While this language is admittedly ambiguous, it is nevertheless based upon sound policy as it recognizes the difficulty in attempting to ascertain when the intent to rob was conceived in a given factual situation. This difficulty was emphasized in Commonwealth v. Hart, supra, when we noted that 'defendant would require a televised stop-watch in every robbery or felony-killing to prove that the felonious intent existed before the attack. It is rare, we repeat, that a criminal telephones or telegraphs his criminal intent and consequently such intent can be properly found by the jury from the facts and circumstances in a particular case.' 403 Pa. at 658, 170 A. 2d at 853-854. In all probability the rule would be better restated to indicate that if the killing

is used to effectuate the robbery then it is immaterial that the intent to kill preceded the intent to rob since the force resulting in death is the force used to accomplish the robbery."

Cases from other jurisdictions which on a factual basis are similar to what we have here are State v. Craig, 82 Wash. 2d 777, 514 P. 2d 151 (1973); and Durham v. Commonwealth, 214 Va. 166, 198 S. E. 2d 603 (1973).

We have been cited State v. Muskus, 158 Ohio St. 276, 109 N. E. 2d 15. There the Ohio court held that in a case of felony murder the lower court erred in not instructing on lesser offenses of second degree murder and manslaughter. It is not clear from the statement of the evidence in that opinion as to what extent the facts are different from this case. The assault in that case arose out of similar circumstances, but there is no detailed recital as to how and when the robbery occurred. We do not attempt to distinguish the case. If it stands for a different rule, we adhere to our own precedents.

AFFIRMED.