KITCHENS, Justice,
dissenting:
¶ 187. The majority finds that “[t]he State need not prove the defendant had the intent to rob prior to the killing.” Maj. Op. ¶33. With respect, I disagree. The longstanding rule in Mississippi regarding intent to commit the underlying felony has always been, until very recently, that it was a jury question to be determined from the facts and surrounding circumstances of the murder. Batiste was not permitted to argue that the facts and circumstances surrounding the death of Galanis did not support an inference that Batiste killed Galanis with the intention of robbing him. Instead, the jury was told that robbery as an “afterthought” to the murder was sufficient to convict. Because I believe that the decision of the majority is the product of a fundamental misapprehension of the relevant and longstanding capital murder jurisprudence of this State, and in clear contravention of the plain language of Mississippi’s capital murder statute, I respectfully dissent.
¶ 188. To understand why the State must prove that a defendant intended to rob a victim prior to the victim’s death to support a capital murder conviction, it is important to review the purposes and goals underlying what has come to be called the felony murder doctrine. “The purpose underlying the modern felony-murder rule is one of deterrence; the rule is intended to deter dangerous conduct by punishing as a first degree murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill.” State v. Allen, 387 Md. 389, 875 A.2d 724, 729 (2005). See also Nay v. State, 123 Nev. 326, 167 P.3d 430, 434 (2007) (citing Allen, 875 A.2d at 729-30); State v. Kimbrough, 924 S.W.2d 888, 890 (Tenn.1996) (“One of the original purposes of the felony-murder rule was to deter the commission of certain felonies in a dangerous or violent way.”); Commonwealth v. Spallone, 267 Pa.Super. 486, 406 A.2d 1146, 1147-48 (1979) (“The purpose of the rule is to deter one about to commit a felony in which a reasonable man knows, or should know, that death may result, by making him criminally responsible for any such deaths.”). This Court has espoused a similar view. “[T]he purpose of the felony-murder statute is to reduce the disproportionate number of accidental homicides which occur during the commission of the enumerated predicate felonies by punishing the party responsible for the homicide not merely for manslaughter, but for murder....” Smith v. State, 499 So.2d 750, 754 (Miss.1986) (quoting People v. Miller, 32 N.Y.2d 157, 344 N.Y.S.2d 342, 297 N.E.2d 85, 87-88 (1973) (emphasis added)). This view is reflected in the plain language of the statute itself. A person is guilty of murder with the underlying felony of robbery if he kills a human being “with or without any design to effect death ... [while] engaged in the commission of the crime of ... robbery, ... or in any attempt to commit [robbery].” Miss.Code Ann. § 97-3-19 (Rev.2006) (emphasis added).
¶ 189. The concept of felony murder was instituted to provide a sort of strict criminal liability for deaths occurring during the commission of certain enumerated crimes. It is important to deter criminals who are willing to engage in certain crimes from recklessly or willfully taking or endangering human life to further those crimes. In that context, it becomes abundantly clear that the intent to rob someone must form in a killer’s mind before the victim is killed in order for that person to be guilty of murder with the underlying felony of robbery. Other jurisdictions *875 which have addressed this question have come to the same conclusion.
[Wjhere an actor kills prior to formulating the intent to commit the underlying felony, we cannot say the actor knew or should have known death might occur from involvement in a dangerous felony because no involvement in a dangerous felony exists since the intent to commit the felony is not yet formulated. Also, the greater deterrent is not necessary, and the rule has no application.
Commonwealth v. Legg, 491 Pa. 78, 417 A.2d 1152, 1154 (1980); see also State v. Buggs, 995 S.W.2d 102, 107 (Tenn.1999) (stating that “the rationale for the felony murder rule underlies the requirement” that the intent to commit a crime must occur prior to the victim’s death for the defendant to be guilty of capital murder in the majority of jurisdictions that enforce that rule). The purpose is to punish those who intend to commit a crime, and are willing to kill or recklessly endanger life to accomplish their goal. This is why the majority of U.S. jurisdictions require that the defendant must have formed an intention to commit the underlying felony when the murder occurred.[9] Under the majority’s analysis, in which the timing of the intent to rob is irrelevant to guilt of felony murder, the deterrent purpose of our capital murder statute is not served. The only thing that is accomplished by such a rule is that those who already are willing to kill someone will think twice about taking the victim’s property after the murder.
¶ 190. Perhaps the most powerful argument against the majority’s interpretation of our capital murder statute is the language of the statute itself. “If [a statute] is not ambiguous, the court should simply apply the statute according to its plain meaning....” City of Natchez v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992). Under the plain language of the statute, a person is guilty of capital murder if, “with or without design to effect death,” the person kills a human being “while engaged in the commission of the [underlying ] crime.” Miss.Code Ann. § 97-3-19 (Rev.2006) (emphasis added). In my view, the only logi *876 cal reading of this language indicates that the victim must be killed contemporaneously with the intent or attempt to commit the underlying felony. To be sure, the intent to commit the underlying crime may form much earlier than the murderous act, and the victim’s death may occur after the underlying felony is completed;[10] but the bottom line is this: the actions which cause the victim’s death must be done while the perpetrator is engaged in the commission of one or more of the felonies listed in the statute. The intent to commit the underlying felony must have formed in the mind of the defendant before the victim’s death. If a human being is killed for a reason completely unrelated to any of the enumerated underlying felonies, it simply cannot be said that the killer struck “while engaged in the commission of the crime.”
¶ 191. The majority finds that the trial court properly instructed the jury that “the phrase “while engaged in the commission of includes the attempt to commit the crime, the complete crime, as well as the immediate post crime acts of the defendant....” Maj. Op. ¶35. As explained below, that interpretation of the phrase consistently had been used by this Court to mean that acts by the defendant surrounding the commission of the crime could be used to support an inference that the defendant was engaged in the underlying crime when the victim was killed. Now, the majority holds that any potential crime committed before, during, or after the victim’s death such that the two form a continuous chain of events makes the defendant guilty per se of capital murder. The majority’s interpretation of our capital murder statute is an extreme expansion of the plain language of the statute. It was invented by this Court-not by the Legislature — and I, respectfully, cannot agree with it.
¶ 192. Until this Court’s decision in Gillett v. State, 56 So.3d 469 (Miss.2010), Mississippi juries were required to weigh competing evidence to determine whether the defendant possessed the requisite intent to commit the underlying felony before the death of the victim. An analysis of our capital murder jurisprudence up to that point is necessary to illustrate that Mississippi required an intent to rob to form before the death of the victim to support a conviction for capital murder, and that the jury was permitted to weigh the evidence and infer from the evidence whether the requisite intent existed when the murder occurred.
¶ 193. The progenitor of our current approach to felony murder is this Court’s decision in Pickle v. State, 345 So.2d 623 (Miss.1977). The defendant in that case was charged with capital murder with the underlying felony of rape. Id. at 625. He argued that, in order to be guilty of capital murder, the State would have had to prove that the rape was committed “while effecting the death of the victim....” Id. This Court held that “where the two crimes are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained.” Id. at 627. In reaching its conclusion, the Court relied in part on two other state court decisions, MacAvoy v. State, 144 Neb. 827, 15 N.W.2d 45 (1944), and Lipscomb v. State, 223 Md. 599, 165 A.2d 918 (1960).[11] In *877 MacAvoy, in holding that a murder which could have occurred after the rape was completed was sufficient to charge the defendant with felony murder, the Nebraska Supreme Court held that a killing “committed within the res gestae of the felony charged” is sufficient to support a charge of felony murder. MacAvoy, 15 N.W.2d at 48-49. In Lipscomb, the Maryland court held that “it would make no difference as to guilt under the above statute whether death occurred after the rape had been accomplished or in an attempt to perpetrate it.” Lipscomb, 165 A.2d at 922.
¶ 194. This Court found the reasoning in those cases persuasive. It apparently was moved by a concern that without a “res gestae” rule, the State would be forced to prove that the killing and the felony coincided in time, and that would actually give criminals incentive to kill their victims after the crime was completed.
If the crime of capital murder could not be sustained unless the homicide occurred during the actual attack upon a victim or during the actual burglary, kidnapping, arson or robbery, such could be an inducement for an assailant to kill his victim after the commission of the first crime in order to silence her/him as a witness. The rule stated in the foregoing cases is the more reasonable, and we hold that where the two crimes are connected in a chain of events and occur as part of the res gestae, the crime of capital murder is sustained.
Pickle, 345 So.2d at 626-27. In essence, the Court in Pickle held that a defendant did not literally have to be killing the victim while simultaneously committing one of the specified felonies to be guilty of capital murder. Instead, it correctly stated that the two crimes have to be part of the same transaction, connected in a chain of events and occurring as part of the res gestae, to support a conviction for felony murder.
¶ 195. For more than twenty years after this Court’s decision in Pickle, Mississippi required the State to prove beyond a reasonable doubt that a defendant accused of murder with the underlying felony of robbery had intended to rob the victim before the killing occurred. “To be clear, our ‘continuous transaction’ doctrine as applied to robbery requires the existence of the intent to rob at a point prior to the death of the victim.” Arthur v. State, 735 So.2d 213, 220 (Miss.1999) (Banks, J., concurring) (emphasis added) (citing Duplantis v. State, 708 So.2d 1327, 1342 (Miss.1998)). The question this Court faced many times after the decision in Pickle was not whether the timing of the intent was irrelevant, but whether the facts and circumstances surrounding the victim’s death supported an inference that the intent to rob had formed in the defendant’s mind before the victim’s death.
¶ 196. In 1978, a little more than a year after Pickle, this Court decided Voyles v. State, 362 So.2d 1236 (Miss.1978). There, the defendant was convicted of capital murder with the underlying felony of robbery. Id. The defendant argued that the evidence did not support the jury’s finding beyond a reasonable doubt that he had intended to rob the victim before he killed her. Id. at 1242. The evidence showed that the defendant and victim had been dating for two months, that the defendant had told his nephew that “he had killed the [victim] because she wouldn’t put the car in his name,” and that the two previously had gotten into an argument because the victim would not let the defendant have her car. Id. at 1243. In determining that the evidence was sufficient to support a conviction, the Court stated “[t]he record is devoid of any other reason for the killing, and this Court cannot say that there is *878 any other reasonable hypothesis upon which to reverse the jury’s findings.” Id. (emphasis added). Also, the Court approved the jury instructions which stated “that it was necessary for [the jury] to find that appellant had the intent to rob when the act of killing was done.” Id. (emphasis added). Clearly, the Court found it important that the “reason” for the murder be tied to the underlying felony. Just as clearly, the Court stated that the jury had to find the defendant had intended to rob the victim when he killed her.
¶ 197. In West v. State, 553 So.2d 8 (Miss.1989), the defendant was charged with capital murder with the underlying felony of sexual battery. West argued that the victim was dead when he committed the sexual battery. Id. at 13. This Court cited cases of other jurisdictions which reasoned that, “because the use of force is an essential element to the crime of rape, the use of deadly force, if done with the intent to coerce the victim into engaging in a sexual act, satisfies the factual nexus between the killing and the underlying felony to elevate the killing to a capital crime.” Id. (emphasis added). Importantly, the Court noted that “the underlying crime begins where an indictable attempt is reached.” Id. (quoting Pickle, 345 So.2d at 626). In finding that the evidence was sufficient to support a capital murder conviction, the Court stated that there was “certainly evidence in this record jfrom which the jury could have found [the victim] alive when West’s assault reached this point.” Id. (emphasis added). The Court concluded that the “consummation of the underlying felony” after the victim’s death did not “vitiate the capital charge.” Id.
¶ 198. Again, it is clear in West that this Court required the intent to commit the underlying crime to have formed before the death of the victim. The use of force had to be “done with the intent to coerce the victim into engaging in a sexual act.” Id. The Court differentiated between an “indictable attempt,” which had to occur before the victim’s death, and the “consummation of the underlying felony,” which could occur after the victim’s death. West stood for the proposition that the intent to commit the underlying felony had to form in the defendant’s mind before the victim’s death, that the full crime could be “consummated” after the victim’s death, and that the jury was to determine whether the evidence supported an inference that the reason for the use of force was to perpetuate the underlying crime.
¶ 199. In ease after case, this Court strongly subscribed to the position that the intent to commit the underlying felony had to have formed in the defendant’s mind before the victim’s death, and it was a jury question with respect to whether the evidence supported such a finding.
Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent.
Wheat v. State, 420 So.2d 229, 238 (Miss.1982) (quoting Shanklin v. State, 290 So.2d 625, 627 (Miss.1974)). In Wheat, the defendant contended that the evidence was insufficient to show that he had intended to rob the murder victim. Id. The Court found that, considering the position of the victim, the injuries to the victim, and the fact that the defendant was found in possession of the victim’s car, whether the defendant had robbed the victim of his car was a question for the jury. Id. at 239. See also Fisher v. State, 481 So.2d 203, 212-14 (Miss.1985) (holding that the cir *879 cumstantial evidence permitted a reasonable juror to find beyond a reasonable doubt and to the exclusion of every reasonable hypothesis that defendant was guilty of rape and robbery); Walker v. State, 671 So.2d 581, 598-96 (Miss.1995) (finding that the evidence was sufficient to support capital murder with underlying felony of rape conviction because jury could have inferred that victim “was still clinging to life” when sexual battery occurred); Duplantis v. State, 708 So.2d 1327, 1342 (Miss.1998) (evidence supported an inference that the defendant, an escapee from jail, “first developed the intent to rob [the victim] ... and then killed [the victim] when he did not cooperate,” and so jury was justified in finding intent to rob when victim’s death occurred); Arthur v. State, 735 So.2d 213, 219 (Miss.1999) (jury permitted to infer that robbery was a “total afterthought” to murder and therefore no indictable attempt to rob began until the victim was dead; “therefore, no continuous transaction linking Arthur with the murder”); Knox v. State, 805 So.2d 527, 532 (Miss.2002) (finding that circumstantial evidence showing defendant possessed victim’s car keys supported jury’s finding that State had proved elements of robbery beyond a reasonable doubt).
¶ 200. The unifying factor in all of the cited cases is that circumstantial evidence existed to show that each defendant had possessed the intent to commit the underlying felony when the victim’s death occurred. It was properly the province of the jury to weigh the circumstantial evidence against any arguments of the defendant in an effort to establish a reasonable alternate hypothesis, and to determine whether the State had proven that the defendant possessed the requisite intent to commit the crime before the victim’s death. Appropriately, the claimed intent could be supported by “the actions of the defendant leading up to the felony, the attempted felony, and flight from the scene of the felony.” West, 553 So.2d at 13. Also, the consummation (but not the intent) of the felony could occur after the victim’s death. “It is not necessary that the victim be deprived of property prior to death to sustain a conviction for robbery.” Knox, 805 So.2d at 531. Walker evidenced yet again that the State is required to prove that the intent to commit the underlying felony had to form before the victim’s death, and that the defendant was permitted to argue other alternatives. “Fully considering the surrounding circumstances of [the victim’s] murder, Walker was unsuccessful for obvious reasons in convincing the jury that he formed the intent to commit the sexual battery only after killing Edwards.” Walker, 671 So.2d at 595 (emphasis added). Our capital murder jurisprudence was clear that the intent to commit the predicate felony had to have formed before the victim’s death, that such intent could be inferred from the surrounding facts and circumstances, and that the timing of the actual commission of the underlying offense was irrelevant with respect to the victim’s death.
¶ 201. This interpretation of Mississippi was consistently applied by this Court through and including the recent capital murder cases decided by this Court in Spicer v. State, 921 So.2d 292 (Miss.2006), and Goff v. State, 14 So.3d 625 (Miss.2009). In Spicer, the defendant had moved for a directed verdict, arguing that his having been in possession of the victim’s truck could not support the jury’s verdict that he had robbed the victim. The Court cited Knox, 805 So.2d at 531, in holding that “possession of a deceased’s property creates a reasonable inference that the property was stolen.” Spicer, 921 So.2d at 311-12. The Court found that the post-death possession of the victim’s property supported the jury’s verdict. Id. It did *880 not announce that the timing of the intent to rob the victim was irrelevant, and that the State did not have to prove that the defendant had intended to rob the victim before the victim’s death. Instead, this Court simply said the issue was one for the jury, and that the circumstantial evidence in this case supported a guilty verdict.
¶ 202. Similarly, in Goff, the defendant was charged with murder with the underlying felony of robbery because the victim’s wallet was found in his car. Goff, 14 So.3d at 646. Goff contended that he had been with the victim for some time, that she had left her wallet in the vehicle before her death, and that no proof was adduced to show that he intentionally had robbed her of the wallet. Id. In affirming the jury’s verdict, this Court again stated that the weighing of the circumstantial evidence regarding the intent to rob and the robbery itself were within the province of the jury. Id. at 648. The Court found that Goffs argument did have some value, since the evidence did not “leave indifferent” his offered alternative hypothesis. Id. However, the evidence weighed against him, and nothing pointed “in favor of Goff with sufficient force that no rational trier of fact could have found this essential element of the crime beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence.” Id. The jury did not buy it, but Goff was permitted to argue that he had not formed the intent to rob the victim before her death; and had he persuaded the jury of his theory of the case, he would not have been convicted of capital murder.
¶ 203. To summarize, as recently as this Court’s decision in Goff, the intent to commit the underlying felony in a capital murder case had to be proved to have existed in the mind of the defendant before the victim’s death. To prove such intent, the State could offer evidence of the acts and statements of the defendant before the crime, during the crime, and after the crime which supported his conviction of capital murder. The defendant was permitted to offer his own evidence to show that he had not possessed the requisite intent to commit the underlying felony. It was within the province of the jury to weigh the facts and circumstances and determine whether the State had proved its case beyond a reasonable doubt. The majority contends that requiring the State to prove that Batiste had the intent to rob Galanis before the murder would force this Court “to abandon settled law governing capital-murder convictions.” Maj. Op. ¶ 33. As stated above, the “settled law” in Mississippi was, until 2010, that the State was required to prove that the defendant had intended to commit the underlying felony prior to the victim’s death.
¶ 204. In concluding that “the State need not prove the defendant had the intent to rob prior to the killing[,]” the majority cites Gillett v. State, 56 So.3d 469 (Miss.2010). Gillett represented a significant departure from our established capital murder jurisprudence. There, the defendant was convicted of murdering two people, then stealing the vehicle of one of the victims several days after the murders occurred. Id. at 476. The “robbery” of the truck was the underlying felony which the State contended elevated Gillett’s crime to capital murder. Id. The jury instructions, to which Gillett objected, stated that the jury had to find Gillett guilty of capital murder if the State showed that he killed the victims and then took the female victim’s personal property (her truck), and that the two crimes were part of a continuous chain of events. Id. at 491. In approving the jury instructions, the majority relied on the “one-continuous-transaction” rule, which states that “where the two crimes ... are connected in a chain of events and occur as part of the res gestae, *881 the crime of capital murder is sustained.” Id. at 492 (citing Pickle, 345 So.2d at 627). Saying that “the intent to rob ... can be shown from the facts surrounding the crime,” and that the jury may infer that the defendant intended to rob the victim when he is discovered in possession of the victim’s property, the majority stated that the trial court did not abuse its discretion in granting the jury instructions tendered by the State. Gillett, 56 So.3d at 492-93.
¶ 205. The cases cited by Gillett in reaching its conclusion stood for the proposition that two crimes connected in a continuous chain of events could support a finding by the jury that the defendant was guilty of capital murder when considering all of the facts and circumstances surrounding the crime (e.g., acts of the defendant leading up to the felony, during the commission of the felony, and flight from the scene of the felony). See Pickle, 345 So.2d at 627; West, 553 So.2d at 13; Walker v. State, 913 So.2d 198, 224 (Miss.2005). The Court took the proposition that such evidence supported a capital murder conviction, and then expanded the doctrine to mean that such evidence required a murder conviction. In one fell swoop, the necessity of proving intent to commit the underlying crime in advance of the victim’s death was dismissed, and what had constituted only a prima facie case for capital murder suddenly became an airtight conviction. With that, I cannot agree. Gillett was a significant departure from the long-settled capital felony murder jurisprudence of this state, and its application in this case or any other runs counter to the established purpose of our felony murder law.
¶ 206. Here, the jury instructions stated that Batiste had to have been “engaged in” the crime of robbery when Galanis was killed. However, the defense was forbidden from arguing that Batiste had lacked the intent to rob Galanis when he was killed, and so Batiste could not have been engaged in the crime of robbery. The State argued that no intent to rob had to have formed in the mind of Batiste before he murdered Galanis, and the trial court agreed. Again, in closing, the prosecution stated that the robbery could be a mere “afterthought,” and the conviction of capital murder could still be sustained. This is plainly incorrect. The majority states that the remark was made “in the context of describing how the one-continuous-transaction rule applied to the case.” Maj. Op. ¶ 39. However, the one-continuous-transaction rule merely supports a conviction of capital murder, it does not mandate one, which is what the State was arguing, and this is the position the trial court took when it refused the defense’s “intent” argument.
¶ 207. Before Gillett, the State would have had a strong prima facie case of capital murder against Batiste; but in light of the flawed reasoning of that case, its burden of proof has been significantly lessened. Batiste should have been permitted to offer his alternate theory regarding his intent when he killed Galanis: that, before or during his killing of the victim, no intent to rob him had formed in his mind. The jury should have been permitted to weigh this argument, along with the State’s, and after considering all of the facts and circumstances surrounding the murder, determine whether the State had proved beyond a reasonable doubt that Batiste intended to kill Galanis for the purpose of robbing him, or whether Batiste’s alternate hypothesis was believable. This procedure was followed in this State until this Court’s incorrect departure from it in Gillett, and it is the only way to ensure that the purpose of the felony murder rule is served by severely punishing those who are willing to kill while committing one of the underlying felonies. The *882 concepts of the one-continuous-transaction rule and intent to commit the predicate underlying felony are not incompatible. The murder and crime forming one continuous transaction establish a baseline for a capital murder case, and the facts and surrounding circumstances must be used by the State to prove that the defendant committed the murder while engaged in the commission of the underlying crime. Instead, under the Court’s ruling today, what once merely supported a conviction for felony murder now mandates one.
¶ 208. In short, the State should have to prove that a defendant in a capital murder case formed the intent to commit the underlying felony before the 'victim’s death. Not to require this neuters the purpose of the felony murder statute. Two crimes occurring as part of a continuous chain of events should support a conviction of capital murder, not mandate one. A defendant should be permitted to offer evidence and arguments that he did not have the requisite intent to commit the underlying felony before the victim’s death, and the jury should determine whether the defendant was “engaged in the commission of the crime ... of robbery” when the victim’s death occurred, as required by our capital murder statute. None of these things happened in this case, and I therefore respectfully dissent. The jury was improperly instructed on the intent element of the capital murder charge. The jury was properly instructed on the lesser-included offense of murder, and the State adduced sufficient evidence to sustain a murder conviction. Accordingly, I would reverse and render the conviction of capital murder, and remand the case for sentencing on the conviction of the lesser-included offense of murder.
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT

Roger Lee Gillett v. State, 56 So.3d 469 (Miss.2010).
Moffett v. State, 49 So.3d 1073 (Miss.2010).
Goff v. State, 14 So.3d 625 (Miss.2009).
Wilson v. State, 21 So.3d 572 (Miss.2009).
Chamberlin v. State, 989 So.2d 320 (Miss.2008).
Loden v. State, 971 So.2d 548 (Miss.2007).
King v. State, 960 So.2d 413 (Miss.2007).
Bennett v. State, 933 So.2d 930 (Miss.2006).
Havard v. State, 928 So.2d 771 (Miss.2006).
Spicer v. State, 921 So.2d 292 (Miss.2006).
Hodges v. State, 912 So.2d 730 (Miss.2005).
Walker v. State, 913 So.2d 198 (Miss.2005).
Le v. State, 913 So.2d 913 (Miss.2005).
Brown v. State, 890 So.2d 901 (Miss.2004).
Powers v. State, 883 So.2d 20 (Miss.2004)
Branch v. State, 882 So.2d 36 (Miss.2004).
Scott v. State, 878 So.2d 933 (Miss.2004).
Lynch v. State, 877 So.2d 1254 (Miss.2004).
Dycus v. State, 875 So.2d 140 (Miss.2004).
Byrom v. State, 863 So.2d 836 (Miss.2003).
*883 Howell v. State, 860 So.2d 704 (Miss.2003).
Howard v. State, 853 So.2d 781 (Miss.2003).
Walker v. State, 815 So.2d 1209 (Miss.2002). *following remand.
Bishop v. State, 812 So.2d 934 (Miss.2002).
Stevens v. State, 806 So.2d 1031 (Miss.2002).
Grayson v. State, 806 So.2d 241 (Miss.2002).
Knox v. State, 805 So.2d 527 (Miss.2002).
Simmons v. State, 805 So.2d 452 (Miss.2002).
Berry v. State, 802 So.2d 1033 (Miss.2001).
Snow v. State, 800 So.2d 472 (Miss.2001).
Mitchell v. State, 792 So.2d 192 (Miss.2001).
Puckett v. State, 788 So.2d 752 (Miss.2001). * following remand.
Goodin v. State, 787 So.2d 639 (Miss.2001).
Jordan v. State, 786 So.2d 987 (Miss.2001).
Manning v. State, 765 So.2d 516 (Miss.2000). *following remand.
Eskridge v. State, 765 So.2d 508 (Miss.2000).
McGilberry v. State, 741 So.2d 894 (Miss.1999).
Puckett v. State, 737 So.2d 322 (Miss.1999). *remanded for Batson hearing.
Manning v. State, 735 So.2d 323 (Miss.1999). *remanded for Batson hearing.
Hughes v. State, 735 So.2d 238 (Miss.1999).
Turner v. State, 732 So.2d 937 (Miss.1999).
Smith v. State, 729 So.2d 1191 (Miss.1998).
Burns v. State, 729 So.2d 203 (Miss.1998).
Jordan v. State, 728 So.2d 1088 (Miss.1998).
Gray v. State, 728 So.2d 36 (Miss.1998).
Manning v. State, 726 So.2d 1152 (Miss.1998).
Woodward v. State, 726 So.2d 524 (Miss.1997).
Bell v. State, 725 So.2d 836 (Miss.1998).
Evans v. State, 725 So.2d 613 (Miss.1997).
Brewer v. State, 725 So.2d 106 (Miss.1998).
Crawford v. State, 716 So.2d 1028 (Miss.1998).
Doss v. State, 709 So.2d 369 (Miss.1996).
Underwood v. State, 708 So.2d 18 (Miss.1998).
Holland v. State, 705 So.2d 307 (Miss.1997).
Wells v. State, 698 So.2d 497 (Miss.1997).
Wilcher v. State, 697 So.2d 1087 (Miss.1997).
Wiley v. State, 691 So.2d 959 (Miss.1997).
Brown v. State, 690 So.2d 276 (Miss.1996).
Simon v. State, 688 So.2d 791 (Miss.1997).
Jackson v. State, 684 So.2d 1213 (Miss.1996).
Williams v. State, 684 So.2d 1179 (Miss.1996).
Davis v. State, 684 So.2d 643 (Miss.1996).
Taylor v. State, 682 So.2d 359 (Miss.1996).
*884 Brown v. State, 682 So.2d 340 (Miss.1996).
Blue v. State, 674 So.2d 1184 (Miss.1996).
Holly v. State, 671 So.2d 32 (Miss.1996).
Walker v. State, 671 So.2d 581 (Miss.1995).
Russell v. State, 670 So.2d 816 (Miss.1995).
Ballenger v. State, 667 So.2d 1242 (Miss.1995).
Davis v. State, 660 So.2d 1228 (Miss.1995).
Carr v. State, 655 So.2d 824 (Miss.1995).
Mack v. State, 650 So.2d 1289 (Miss.1994).
Chase v. State, 645 So.2d 829 (Miss.1994).
Foster v. State, 639 So.2d 1263 (Miss.1994).
Conner v. State, 632 So.2d 1239 (Miss.1993).
Hansen v. State, 592 So.2d 114 (Miss.1991).
*Shell v. State, 554 So.2d 887 (Miss.1989); Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding; Shell v. State, 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
Davis v. State, 551 So.2d 165 (Miss.1989).
Minnick v. State, 551 So.2d 77 (Miss.1989).
*Pinkney v. State, 538 So.2d 329 (Miss.1989); Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding; Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
*Clemons v. State, 535 So.2d 1354 (Miss.1988); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding; Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
Woodward v. State, 533 So.2d 418 (Miss.1988).
Nixon v. State, 533 So.2d 1078 (Miss.1987).
Cole v. State, 525 So.2d 365 (Miss.1987).
Lockett v. State, 517 So.2d 1346 (Miss.1987).
Lockett v. State, 517 So.2d 1317 (Miss.1987).
Faraga v. State, 514 So.2d 295 (Miss.1987).
*Jones v. State, 517 So.2d 1295 (Miss.1987); Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding; Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Wiley v. State, 484 So.2d 339 (Miss.1986).
Johnson v. State, 477 So.2d 196 (Miss.1985).
Gray v. State, 472 So.2d 409 (Miss.1985).
Cabello v. State, 471 So.2d 332 (Miss.1985).
Jordan v. State, 464 So.2d 475 (Miss.1985).
Wilcher v. State, 455 So.2d 727 (Miss.1984).
Billiot v. State, 454 So.2d 445 (Miss.1984).
Stringer v. State, 454 So.2d 468 (Miss.1984).
Dufour v. State, 453 So.2d 337 (Miss.1984).
Neal v. State, 451 So.2d 743 (Miss.1984).
*885 Booker v. State, 449 So.2d 209 (Miss.1984).
Wilcher v. State, 448 So.2d 927 (Miss.1984).
Caldwell v. State, 443 So.2d 806 (Miss.1983).
Irving v. State, 441 So.2d 846 (Miss.1983).
Tokman v. State, 435 So.2d 664 (Miss.1983).
Leatherwood v. State, 435 So.2d 645 (Miss.1983).
Hill v. State, 432 So.2d 427 (Miss.1983).
Pruett v. State, 431 So.2d 1101 (Miss.1983).
Gilliard v. State, 428 So.2d 576 (Miss.1983).
Evans v. State, 422 So.2d 737 (Miss.1982).
King v. State, 421 So.2d 1009 (Miss.1982).
Wheat v. State, 420 So.2d 229 (Miss.1982).
Smith v. State, 419 So.2d 563 (Miss.1982).
Johnson v. State, 416 So.2d 383 (Miss.1982).
Edwards v. State, 413 So.2d 1007 (Miss.1982).
Bullock v. State, 391 So.2d 601 (Miss.1981).
Reddix v. State, 381 So.2d 999 (Miss.1980).
Jones v. State, 381 So.2d 983 (Miss.1980).
Culberson v. State, 379 So.2d 499 (Miss.1979).
Gray v. State, 375 So.2d 994 (Miss.1979).
Jordan v. State, 365 So.2d 1198 (Miss.1978).
Voyles v. State, 362 So.2d 1236 (Miss.1978).
Irving v. State, 361 So.2d 1360 (Miss.1978).
Washington v. State, 361 So.2d 61 (Miss.1978).
Bell v. State, 360 So.2d 1206 (Miss.1978).
* Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCING PHASE

Ross v. State, 954 So.2d 968 (Miss.2007).
Flowers v. State, 947 So.2d 910 (Miss.2007).
Flowers v. State, 842 So.2d 531 (Miss.2003).
Randall v. State, 806 So.2d 185 (Miss.2002).
Flowers v. State, 773 So.2d 309 (Miss.2000).
Edwards v. State, 737 So.2d 275 (Miss.1999).
Smith v. State, 733 So.2d 793 (Miss.1999).
Porter v. State, 732 So.2d 899 (Miss.1999).
Kolberg v. State, 704 So.2d 1307 (Miss.1997).
Snelson v. State, 704 So.2d 452 (Miss.1997).
Fuselier v. State, 702 So.2d 388 (Miss.1997).
Howard v. State, 701 So.2d 274 (Miss.1997).
Lester v. State, 692 So.2d 755 (Miss.1997).
*886 Hunter v. State, 684 So.2d 625 (Miss.1996).
Lanier v. State, 684 So.2d 93 (Miss.1996).
Giles v. State, 650 So.2d 846 (Miss.1995).
Duplantis v. State, 644 So.2d 1235 (Miss.1994).
Harrison v. State, 635 So.2d 894 (Miss.1994).
Butler v. State, 608 So.2d 314 (Miss.1992).
Jenkins v. State, 607 So.2d 1171 (Miss.1992).
Abram v. State, 606 So.2d 1015 (Miss.1992).
Balfour v. State, 598 So.2d 731 (Miss.1992).
Griffin v. State, 557 So.2d 542 (Miss.1990).
Bevill v. State, 556 So.2d 699 (Miss.1990).
West v. State, 553 So.2d 8 (Miss.1989).
Leatherwood v. State, 548 So.2d 389 (Miss.1989).
Mease v. State, 539 So.2d 1324 (Miss.1989).
Houston v. State, 531 So.2d 598 (Miss.1988).
West v. State, 519 So.2d 418 (Miss.1988).
Davis v. State, 512 So.2d 1291 (Miss.1987).
Williamson v. State, 512 So.2d 868 (Miss.1987).
Foster v. State, 508 So.2d 1111 (Miss.1987).
Smith v. State, 499 So.2d 750 (Miss.1986).
West v. State, 485 So.2d 681 (Miss.1985).
Fisher v. State, 481 So.2d 203 (Miss.1985).
Johnson v. State, 476 So.2d 1195 (Miss.1985).
Fuselier v. State, 468 So.2d 45 (Miss.1985).
West v. State, 463 So.2d 1048 (Miss.1985).
Jones v. State, 461 So.2d 686 (Miss.1984).
Moffett v. State, 456 So.2d 714 (Miss.1984).
Lanier v. State, 450 So.2d 69 (Miss.1984).
Laney v. State, 421 So.2d 1216 (Miss.1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT

Reddix v. State, 547 So.2d 792 (Miss.1989).
Wheeler v. State, 536 So.2d 1341 (Miss.1988).
White v. State, 532 So.2d 1207 (Miss.1988).
Bullock v. State, 525 So.2d 764 (Miss.1987).
Edwards v. State, 441 So.2d 84 (Miss.1983).
Dycus v. State, 440 So.2d 246 (Miss.1983).
Coleman v. State, 378 So.2d 640 (Miss.1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY

Fulgham v. State, 46 So.3d 315 (Miss.2010).
Rubenstein v. State, 941 So.2d 735 (Miss.2006).
*887 King v. State, 784 So.2d 884 (Miss.2001).
Walker v. State, 740 So.2d 873 (Miss.1999).
Watts v. State, 733 So.2d 214 (Miss.1999).
West v. State, 725 So.2d 872 (Miss.1998).
Smith v. State, 724 So.2d 280 (Miss.1998).
Berry v. State, 703 So.2d 269 (Miss.1997).
Booker v. State, 699 So.2d 132 (Miss.1997).
Taylor v. State, 672 So.2d 1246 (Miss.1996).
*Shell v. State, 554 So.2d 887 (Miss.1989); Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding; Shell v. State, 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
*Pinkney v. State, 538 So.2d 329 (Miss.1989); Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding; Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
*Clemons v. State, 535 So.2d 1354 (Miss.1988); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding; Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
*Jones v. State, 517 So.2d 1295 (Miss.1987); Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding; Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Russell v. State, 607 So.2d 1107 (Miss.1992).
Holland v. State, 587 So.2d 848 (Miss.1991).
Willie v. State, 585 So.2d 660 (Miss.1991).
Ladner v. State, 584 So.2d 743 (Miss.1991).
Mackbee v. State, 575 So.2d 16 (Miss.1990).
Berry v. State, 575 So.2d 1 (Miss.1990).
Turner v. State, 573 So.2d 657 (Miss.1990).
State v. Tokman, 564 So.2d 1339 (Miss.1990).
Johnson v. State, 547 So.2d 59 (Miss.1989).
Williams v. State, 544 So.2d 782 (Miss.1989); sentence aff'd. 684 So.2d 1179 (1996).
Lanier v. State, 533 So.2d 473 (Miss.1988).
Stringer v. State, 500 So.2d 928 (Miss.1986).
Pinkton v. State, 481 So.2d 306 (Miss.1985).
Mhoon v. State, 464 So.2d 77 (Miss.1985).
Cannaday v. State, 455 So.2d 713 (Miss.1984).
Wiley v. State, 449 So.2d 756 (Miss.1984); resentencing affirmed, Wiley v. State, 484 So.2d 339 (Miss.1986); cert. denied, Wiley v. Mississippi, 479 U.S. 906 (1986); resentencing ordered, Wiley v. State, 635 So.2d 802 (Miss.1993) following writ of habeas corpus issued pursuant to Wiley v. Puckett, 969 F.2d 86, 105-106 (5th Cir.1992); resentencing affirmed.
Williams v. State, 445 So.2d 798 (Miss.1984). * Case was originally affirmed in this Court but on remand from U.S. Su *888 preme Court, case was remanded by this Court for a new sentencing hearing.

. See e.g., United States v. Bolden, 514 F.2d 1301, 1309 (D.C.Cir.1975); Ex parte Johnson, 620 So.2d 709, 713 (Ala.1993) (stating that a robbery committed as a mere afterthought and unrelated to the murder will not sustain a conviction of felony murder); Todd v. State, 884 P.2d 668, 683 (Alaska App.1994) ("[T]he defendant's intent to commit one of the listed felonies constitutes the culpable mental state that makes any resulting homicide murder. ..."); Grigsby v. State, 260 Ark. 499, 542 S.W.2d 275, 280 (1976) ("We find no room for quarrel with appellant’s assertion that larceny from the body of one killed, as an afterthought, would not constitute a capital felony.”); People v. Ainsworth, 45 Cal.3d 984, 248 Cal.Rptr. 568, 755 P.2d 1017, 1037 (1988) ("Under the felony-murder rule, the evidence must establish that the defendant harbored the felonious intent either prior to or during the commission of the acts which resulted in the victim’s death.”) (citation omitted); People v. Brannon, 194 Mich.App. 121, 486 N.W.2d 83, 85-86 (1992), app. denied, 441 Mich. 887, 495 N.W.2d 384 (1992) ("It is not necessary that the murder be contemporaneous with the enumerated felony. The statute requires only that the defendant intended to commit the underlying felony at the time the homicide occurred.”); State v. Newman, 605 S.W.2d 781, 787 (Mo.1980) (approving jury instruction stating defendant must have had intent to commit underlying felony when killing occurred); State v. Montgomery, 191 Neb. 470, 215 N.W.2d 881, 883 (1974); People v. Joyner, 26 N.Y.2d 106, 308 N.Y.S.2d 840, 257 N.E.2d 26, 27 (1970); Commonwealth v. Legg, 417 A.2d at 1154; Buggs, 995 S.W.2d at 106 (”[I]n a felony-murder case, intent to commit the underlying felony must exist prior to or concurrent with the commission of the act causing the death of the victim.... ”); Robertson v. State, 871 S.W.2d 701, 705 (Tex.Crim.App.1993) ("In order for the murder to qualify as capital murder ... the intent to rob must be formed prior to or concurrent with the murder.’’)

. For example, killing a victim after committing the crime to aid in escape and avoid identification and punishment still would be done in furtherance of the underlying crime.

. Both Maryland and Nebraska require the state to prove that the defendant intended to rob the victim before the victim’s death to support a conviction for felony murder. See State v. Allen, 387 Md. 389, 875 A.2d 724, 729 (2005); State v. Montgomery, 191 Neb. 470, 215 N.W.2d 881, 883 (1974).